Argued and submitted January 21, affirmed on appeal and on cross-appeal
November 3, 1993

## GIER'S LIQUOR
## & SPORTING GOODS, INC.,
*Appellant - Cross-Respondent,*

*v.*

## ASSOCIATION OF UNIT OWNERS
## OF DRIFTWOOD SHORES
## SURFSIDE INN CONDOMINIUM,
*Respondent - Cross-Appellant,*

*and*

Raymond L. GIER
and Delores A. Gier,
*Cross-Defendants - Cross-Respondents.*

(16-89-07392; CA A72745 (Control), A74420)
(Cases Consolidated)

862 P2d 560

Thomas J. Peterson argued the cause for appellant - cross-respondent. With him on the briefs was Douglas L. McCool, P.C.

A. Richard Vial argued the cause for respondent - cross-appellant. With him on the briefs were John D. Parsons and A. Richard Vial & Associates, P.C.

No appearance for cross-defendants - cross-respondents.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

De MUNIZ, J.

## De MUNIZ, J.

Plaintiff, a California corporation, owns a condominium unit at Driftwood Shores Surfside Inn Condominium (Driftwood). Defendant is an association of the owners of 88 units of Driftwood. Defendant was formed under the Oregon Condominium Act and its predecessor statutes pursuant to a Declaration of Unit Ownership. ORS ch 100. Defendant is governed by its declaration and bylaws, ORS 100.100; ORS 100.415, and it operates through its board of directors. In May, 1985, Driftwood's restaurant and conference facility was destroyed by fire. That facility was located on property subject to defendant's declaration. In September, 1985, at a duly constituted meeting, 52 percent of the owners selected real property adjacent to Driftwood as the site for a new facility. That property was not owned by defendant. The owners also approved financing of $1,200,000 to fund the project. At two later meetings, the owners approved an additional 10 percent financing and an assessment on each unit to pay for the financing of the facility.

Plaintiff notified defendant that it objected to the facility and demanded that it not be assessed. The facility was constructed and has been operating since October, 1986. Plaintiff has not paid the assessments. In June, 1988, defendant filed a lien against plaintiff's condominium unit. Plaintiff then brought this action alleging a cloud on its title. Defendant filed a counterclaim against plaintiff to foreclose its lien and joined cross-defendants, who are the beneficiaries of a trust deed granted by plaintiff. Plaintiff and defendant filed cross-motions for summary judgment, based on stipulated facts. The trial court found for defendant and held that cross-defendants' interest was subrogated to that of defendant for purposes of foreclosure. We affirm.

Plaintiff's argument focuses on defendant's purchase of the additional real property, on which the facility was built. It argues that, under ORS 100.125,[1] defendant may annex real property only if its declaration complies with ORS

---

[1] ORS 100.125 provides:

"If the declaration complies with ORS 100.105(2), until the termination date, additional property may be annexed to the condominium by the recording of a supplemental declaration and plat in accordance with ORS 100.115 and 100.120."

100.105(2)[2] and a supplemental declaration and plat are recorded. Plaintiff argues that neither condition was met here.

Defendant argues that the statutes on which plaintiff relies apply only when real property is annexed to the condominium and that it acquired, but did not annex, the property in dispute here. Plaintiff counters, citing dictionary definitions to show that "acquire" and "annex" mean the same thing. It argues that to accept defendant's distinction would render the Condominium Act meaningless by allowing an association to circumvent the act's requirements.

■ Dictionary definitions are not required in order to determine that the legislature authorized a condominium association to own real property that is not subject to the annexation requirements of chapter 100. ORS 100.405(4) provides, in part:

> "Subject to the provisions of the condominium's declaration and bylaws * * * the association may:
>
> "* * * * *
>
> "(h) Acquire by purchase, lease, devise, gift or voluntary grant real property or any interest therein and take, hold, possess and dispose of real property or any interest therein[.]"

That provision is not limited to acquiring real property that may only be submitted to condominium form of ownership. *See* ORS 100.020. Rather, the legislature has provided that an association may acquire real property, if its declaration and bylaws so permit. *Towerhill Condo. Assoc. v. American Condo. Homes*, 66 Or App 342, 347, 675 P2d 1051 (1984).

Plaintiff argues that defendant's declaration and bylaws do not provide the authority to purchase real property. It contends that, to make the purchase, defendant would have to amend its declaration, which requires a vote of 75 percent of the owners, and that such a vote did not take place.

---

[2] ORS 100.105(2) provides, in part:

"In the event the declarant proposes to annex additional property to the condominium under ORS 100.125, the declaration shall also contain a general description of the plan of development[.]"

■ However, an amendment is not required if the board already has the authority to purchase real property. Article III of defendant's bylaws deals with the board of directors. Section 2 provides, as relevant:

> "POWERS. The Board of Directors shall be vested with the management of all the affairs of [defendant], including, but without being limited to, the power to direct the purchase by [defendant] of such property as the purposes thereof shall require, to provide for the incurring of debts on behalf of [defendant] and the issuance of note and other evidences of such debts, and to provide for the mortgage pledge or hypothecation of all, or any part of the assets of [defendant] to accomplish the purposes of [defendant]; provided that the purchase by the Board of Directors of capital assets or improvements, may not exceed the sum of TWO THOUSAND DOLLARS ($2,000) without the enactment of resolution authorizing additional purchases of capital assets or improvements to the common elements by more than fifty percent (50%) of the voting qualified unit owners."

Plaintiff argues that section 2 only authorizes the Board to purchase such things as are necessary for the "day-to-day operation" of defendant. Defendant argues that plaintiff's reading is "very narrow and excruciatingly limited."

■ We agree with defendant that the language of section 2 shows that "property" is to be broadly construed. The board is authorized to incur debts that may exceed $2,000 if more than 50 percent of the voting owners concur. The board may mortgage the assets of defendant in doing so. We agree with defendant that the board's unlimited power to mortgage defendant's assets demonstrates that the board has authority to make substantial purchases of property—real or personal. That conclusion is further reflected in the board's authority to acquire capital assets in excess of $2,000.

■ Defendant relies on Article VI, section 1, of its bylaws as authority for the assessment to pay for the facility. That section provides, in part:

> "EXPENSES AND ASSESSMENT. Each unit owner shall contribute pro rata based on his percentage of ownership in the general common elements, towards the common condominium expenses, *including, but not limited to*, the cost of operation, maintenance, *repair and replacement* * * *. The Board of Directors shall fix a monthly assessment for

each unit in an amount sufficient to provide for all current expenses." (Emphasis supplied.)

Plaintiff argues that "repair and replacement" as a "common condominium expense" has no relationship to the purchase of real property. Although that might be true in some instances, we do not agree that the relationship does not exist here.

ORS 100.005(8)(a) and (c) define as common expenses "administration, maintenance, repair or replacement of the common elements," and expenses "agreed upon as common * * * by the declaration or the bylaws of the particular condominium." Under exhibit C of the declaration here, the common elements consist of

"the underlying land, sewage treatment plant, sewage effluent line and easement for effluent line, swimming pool and recreation building, elevators, walkways, stairs, V shaped area between the north and south wings of building 'D,' reception lobby, manager's office, telephone service room, cover over entry, asphalt, curbing, sea barrier, underground utility lines, project lighting *and all other improvements not located within a living unit.*" (Emphasis supplied.)

The restaurant and conference facility was part of the common elements before it was destroyed by fire. As noted above, the bylaws authorize assessment for the repair and replacement of common elements. The replacement of the restaurant and conference facility here included the cost of the real property. Plaintiff is liable for the assessment.

Defendant has cross-appealed from, and plaintiff has assigned error to, the award of attorney fees. On July 19, 1991, the trial court ruled by letter in favor of defendant's motion for summary judgment and directed defendant's counsel to prepare a final judgment. On August 19, defendant's counsel sent a proposed judgment and a statement for attorney fees, costs and disbursements to plaintiff's counsel. Defendant's counsel did not, at that time, file a copy of the statement for fees with the court, but plaintiff's counsel filed an objection to the statement on September 3. The form of the judgment was subsequently modified twice by agreement of the parties and was finally signed by the trial court on November 12. On November 18, defendant sent a copy of its statement of fees to the court, but did not notify plaintiff. On

December 12, plaintiff was notified by the trial court of the award of $25,345 in fees for defendant. Plaintiff then filed a motion for relief. After a hearing on plaintiff's motion in February, 1992, the trial court reduced the fees to $15,000.

■      Plaintiff argues that the court erred in awarding attorney fees, because defendant did not comply with ORCP 68C(4)(a)[3] when it served its statement of fees on plaintiff three months before entry of judgment, instead of after entry of judgment. Defendant contends that its service on plaintiff complied with ORCP 68C(4)(a).

We need not decide whether service of the statement before entry of judgment strictly complied with ORCP 68C(4). ORCP 12B provides:

"The court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party."

Plaintiff does not contend that the statement of fees submitted by defendant after judgment differed from that which was served on it in August. We agree with defendant that plaintiff was not prejudiced by defendant's failure to resubmit its statement. The negotiations between the parties over the content of the judgment were protracted. Plaintiff received a copy of the statement of fees and filed an objection to it. Once it learned that fees had been granted, it filed for relief. There was a hearing on plaintiff's objections, and the original award was reduced.

■      Plaintiff argues that the $15,000 award was not reasonable. Defendant argues that the original award should not have been reduced. A finding of the trial court on the amount of reasonable attorney fees to be awarded will not be overturned if supported by substantial competent evidence. *State High. Com. et al. v. Kendrick et al.*, 227 Or 608, 363 P2d

---

[3] ORCP 68C(4)(a) provides:

"A party seeking attorney fees or costs and disbursements shall, not later than 14 days after entry of judgment pursuant to Rule 67:

"(i)   File with the court a signed and detailed statement of the amount of attorney fees or costs and disbursements, together with proof of service, if any, in accordance with Rule 9 C.; and

"(ii)   Serve, in accordance with Rule 9 B., a copy of the statement on all parties who are not in default for failure to appear."

1078 (1961); *Mt. Shadow Homes v. Gray*, 61 Or App 230, 233, 656 P2d 383, *rev den* 295 Or 31 (1983). There is evidence here that the award was reasonable.

Affirmed on appeal and on cross-appeal.